## REGULATION OF INTERURBAN CARS WHEN ON THE TRACKS OF A CITY COMPANY.

Circuit Court of Cuyahoga County.

### A. G. STAFFORD, A TAX-PAYER, v. THE CLEVELAND RAILWAY COMPANY.

Decided, May 22, 1912.

*Street Railway Franchise—Regulation of Stopping Places and Fare—Interurban Cars Operated by City Company.*

1. Under a renewal grant of a street railway franchise a municipal corporation has the right to provide that the street railway company may operate "express passenger service and other special cars" and in the regulation thereof the municipality may authorize a special rate of fare upon such cars and that they stop at certain designated places only for the purpose of taking on and letting off passengers.

2. When the cars of an interurban electric railroad company at the terminus of a street railroad company operating under a municipal franchise are turned over to the latter company and are operated by it on its own tracks, the interurban company retaining no control over said cars when so operated by the other company and having no contract with it as provided in Sections 9130 to 9133, inclusive, General Code, the cars become the cars of the city company and, as such, subject to regulation by the city council, under the terms of the franchise to the city company.

*E. K. Wilcox* and *Geo. D. Hile,* for plaintiff.
*Squire, Sanders & Dempsey, M. B. & H. H. Johnson, Blandin, Hogsett & Ginn* and *Kline, Tolles & Morley,* contra.

WINCH, J.; MARVIN, J., and NIMAN, J., concur.

The purpose of this action is to require suburban cars to be operated within the city limits in all respects as city cars are operated, and at the same rate of fare.

Under the "Taylor" grant or ordinance, so-called, city cars are required to stop to take on and let off passengers at all street intersections and other regular stopping places, and the fare

is three cents with transfer for one cent, which is rebated, if the transfer is used.

Suburban cars, after they enter the city, do not stop to take on city passengers, nor will they stop within the city to let them off, as they are returning to the city limits. A city fare of five cents, without transfer privileges, is also charged upon suburban cars.

The defendants to this action are the Cleveland Railway Company, operating under said Taylor grant from the city, and all the suburban or interurban electric railroad companies whose lines reach the city.

On the hearing the interurban electric railroad companies were all dismissed from the action, because no evidence was introduced tending to show that said companies were operating their cars within the city and collecting city fares, and because no evidence was before the court that any of them had entered into such contracts with the city company as are authorized by Sections 9130, 9131, 9132 and 9133 of the General Code of Ohio, which provide that while the cars of an interurban electric railroad company are being operated by it over and along the tracks of a street railway company in a municipal corporation, under a contract entered into between the two companies in the manner provided in said sections, the cars of the interurban company shall be subject to the obligations imposed by and upon the cars of the city company, and the fare charged *by the interurban company* within the municipality shall not be greater than that fixed in the franchise held or owned by the city company.

The only evidence in the case is to the effect that under some arrangement with the Cleveland Railway Company, the suburban cars are turned over to it, when they reach the city limits, and are operated by it and fares collected by it, within the city.

Such being the case, the suburban cars after they enter the city, being in effect cars of the Cleveland Railway Company, and being operated and controlled by it exclusively, the suburban companies are neither necessary nor proper parties to this suit. We have no evidence that they have any interest in the fares collected.

The Cleveland Railway Company claims the right to operate said suburban cars in the manner complained of under Section 24 of the Taylor grant and an ordinance of the city of Cleveland, passed in conformity to said section on December 26, 1911. Said Section 24 reads, in part, as follows:

"The company (that is, the Cleveland Railway Company) may transport along and upon its lines, in suitable cars, such materials, supplies, appliances and tools as it may need for the construction, maintenances and operation of its roads. It may carry upon its passenger cars, or upon other cars, mail for the government of the United States. It may operate funeral-cars, observation cars, express passenger service, and other special cars, at rates to be fixed from time to time by the council of the city of Cleveland, not lower than the rate in force for the carriage of passengers from time to time, as is provided by the terms of this ordinance."

Said ordinance of December 26, 1912, reads as follows:

"WHEREAS, the Cleveland Railway Company is operating within the limits of the city of Cleveland the cars of the Cleveland, Painesville & Eastern Railroad Company, the Cleveland & Eastern Traction Company, the Cleveland, Southwestern & Columbus Railway Company, the Cleveland, Youngstown & Eastern Railway Company, the Lake Shore Electric, and the Northern Ohio Traction & Light Company by contract between the Cleveland Railway Company and said companies; and

"WHEREAS, all of said companies are engaged in interurban traffic and said cars are operated from the vicinity of the public square in the city of Cleveland to the various municipalities within and outside of Cuyahoga county; and

"WHEREAS, all of said companies are engaged in interurban traffic and said cars are operated from the vicinity of the public square in the city of Cleveland to the various municipalities within and outside of Cuyahoga county; and

"WHEREAS, Section 24 of ordinance No. 16238a authorizes the Cleveland Railway Company to operate express passenger service and other special cars at rates to be fixed from time to time by the council of the city of Cleveland and not lower than the rate in force for the carriage of passengers from time to time, as is provided by the terms of ordinance No. 16238a;

"*Now, Therefore, Be it Resolved,* by the council of the city of Cleveland, that the Cleveland Railway Company in the operation of the cars of the Cleveland, Painesville & Eastern Railroad

Company, the Cleveland & Eastern Traction Company, the Cleveland, Southwestern & Columbus Railway Company, the Cleveland, Youngstown & Eastern Railway Company, the Lake Shore Electric Railway Company, and the Northern Ohio Traction & Light Company, is hereby directed to stop the said interurban cars outgoing from the public square only for the purpose of taking on passengers whose destinations are to points beyond the city limits and to stop said interurban cars in-going to the public square only for the purpose of discharging passengers. Whenever practicable, by reason of existing 'Ys' and turnouts, the Cleveland Railway Company is directed to give the right-of-way to said interurban cars.

"*Be it Further Resolved,* That said interurban cars of said the Cleveland, Painesville & Eastern Railroad Company, the Cleveland & Eastern Traction Company, the Cleveland, Southwestern & Columbus Railway Company, the Cleveland, Youngstown & Eastern Railway Company, the Lake Shore Electric Railway Company and the Northern Ohio Traction & Light Company, operated by the Cleveland Railway Company, are hereby designated as special cars and as express passenger cars, and the rate of fare on said cars within the city limits is hereby fixed at five cents without the right of transfer either to or from said interurban cars; except where the right of transfer is stipulated in the suburban grant under which such cars are operated."

The Taylor grant was a renewal grant, and we hold that Section 24 was within the power of the city to enact. By said section the city granted the railway company the right to operate express passenger service and other special cars, and reserved the right to fix the rate of fare charged on such special cars, from time to time, the only condition being that the rates for such service and on special cars should not be lower than the rate in force for the carriage of passengers on regular city cars.

Having reserved this right to fix the rate of fares on special cars, the action of the city council in doing so on December 26, 1911, was within the terms of the contract between the city and the railway company, contained in the grant or franchise, and is lawful and binding upon both the city and the railway company and upon the public, for whom the council acted, as well.

Nor can there be any question that under the Taylor grant the company and the city can agree upon proper stopping places for cars and, having authorized express passenger service, that

can only be obtained by eliminating many ordinary stops in the manner provided by the ordinance of December 26, 1911.

Plaintiff suggests that because said ordinance designates the cars to be specially operated as the cars of the suburban traction companies, naming them, said ordinance itself is ineffectual to grant the Cleveland Railway Company the right to operate them as it does, but is an effort to authorize the suburban companies to operate their cars in the city in an unlawful manner.

True, the cars are described as the cars of the suburban companies; they might have been described by color or number; the method used, however, was a convenient and proper one and no difficulty arises from it, for it is plainly stated by the ordinance that "the Cleveland Railway Company, in the operation of the cars (describing them as aforesaid) is hereby directed," etc. Nowhere in the ordinance is any direction or authority given to the suburban companies, and its entire purport is within the purview of the Taylor grant and it operated upon and binds the Cleveland Railway Company alone.

The petition is dismissed.